UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAYNA L. JONES,

          Plaintiff,         Civil Action No. 14-13709
                                 Honorable Robert H. Cleland
                                 Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

          Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [13, 14]**

Plaintiff Jayna L. Jones ("Jones") brings this action pursuant to 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [13, 14], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, although the Administrative Law Judge's ("ALJ") decision in this matter contains numerous errors, ultimately, his conclusion that Jones is not disabled under the Act is supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [14] be GRANTED, Jones' Motion for Summary Judgment [13] be DENIED, and that, pursuant to sentence four of 42 U.S.C. §405(g), the Commissioner's decision be AFFIRMED.

**II.     REPORT**

    **A.     Procedural History**

On May 17, 2010, Jones filed applications for DIB and SSI. (Tr. 406-15). Her applications were denied initially on August 31, 2010. (Tr. 200-08). After an administrative hearing held on February 16, 2012 (Tr. 115-41), ALJ Scott Staller issued a written decision, dated May 11, 2012, finding that Jones is not disabled under the Act. (Tr. 178-89). On July 17, 2013, the Appeals Council issued an order remanding the case to ALJ Staller for further proceedings. (Tr. 196-98). On October 24, 2013, ALJ Staller held a second hearing (Tr. 88-114) and, by decision dated January 31, 2014, he again denied Jones' applications for DIB and SSI, finding that she is not disabled under the Act (Tr. 63-80). On July 30, 2014, the Appeals Council denied review. (Tr. 1-6). Jones timely filed for judicial review of the final decision on September 25, 2014. (Doc. #1).

    **B.     Framework for Disability Determinations**

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

2

> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**C.   Background**

    *1.   Jones' Reports and Testimony*

In an undated disability report, Jones, who was born in 1976, indicated that she is 5'8" tall and weighs 285 pounds.  (Tr. 462, 466).  She alleges she is disabled as a result of degenerative disc disease, depression, bipolar disorder, and carpal tunnel syndrome.[1]  (Tr. 466).  At the time of the October 2013 hearing, she lived in a house with her boyfriend and 10-month old daughter.  (Tr. 99).  She completed high school and earned a commercial driver's license.  (Tr. 92-93, 120, 467).  Previously, Jones worked as a cashier, waitress, machine operator, in a warehouse, and as a truck driver.  (Tr. 467).  She stopped working on December 29, 2008, primarily because of "back problems."  (Tr. 95, 122, 466).

---

[1] Because Jones' arguments before this Court primarily concern her physical impairments – specifically, the limitations caused by her carpal tunnel syndrome – the Court will not discuss Jones' mental impairments in detail herein.

Jones testified that she still experiences constant low back pain; she claims the pain is so bad at times that she can "barely even walk to go to the bathroom." (Tr. 96, 122). She also has a plate and screws in her right hip, as a result of a car accident, which causes her pain. (Tr. 96, 122). Her doctor recommended back surgery, but wanted to try steroid injections first. (Tr. 103). Jones further testified that she has "severe carpal tunnel" in her right (dominant) hand and said that that hand "pretty much consistently stays numb." (Tr. 97, 123). In addition, she has carpal tunnel in her left hand, which is "not as severe," with numbness that "comes and goes." (*Id.*). Jones testified that carpal tunnel release surgery has been recommended. (Tr. 103). She also has abdominal pain, which she was told is caused by "multiple ulcers." (Tr. 99).

Jones testified that she is able to feed her infant daughter, but she has difficulty carrying her or bathing her. (Tr. 99). She spends most of her days lying on the couch watching television, dozing off for short periods of time (30-45 minutes). (Tr. 100, 107, 125, 492). She is able to dress herself, bathe herself, and go grocery shopping, but she does not cook or do any housework. (Tr. 100-01, 125-26, 494). She has difficulty sleeping because of her back and hip pain. (Tr. 101). Jones indicated that, because her right hand is consistently numb, she sometimes forgets she is holding an item and drops it. (Tr. 104). She has difficulty picking things up, grasping things, opening doors, working buttons and zippers, and holding on to writing or eating utensils. (Tr. 104-06). She has a driver's license but does not drive often because sitting is uncomfortable and her hands "go numb." (Tr. 92, 105, 119).[2]

    2. *Medical Evidence*

The Court has thoroughly reviewed Jones' medical record. In lieu of summarizing her medical history here, the Court will make references and provide citations to the record as

---

[2] In a third party function report dated June 6, 2010, Jones' step-sister, Dianna Swartz, generally corroborated Jones' statements. (Tr. 479-86).

4

necessary in its discussion of the parties' arguments.

### 3. Vocational Expert's Testimony

George Starosta testified as an independent vocational expert ("VE") at the October 2013 administrative hearing. (Tr. 109-12). The VE characterized Jones' past relevant work as a childcare attendant, sign assembler, warehouse worker, and commercial truck driver as ranging from unskilled to semi-skilled in nature, and medium in exertion. (Tr. 110). The ALJ asked the VE to imagine a claimant of Jones' age, education, and work experience, who could perform sedentary work with the following additional limitations: she can occasionally climb ramps or stairs, but can never climb ladders, ropes, or scaffolds; she can occasionally balance, stoop, kneel, crouch, and crawl; she can frequently reach, handle, and finger with her dominant right upper extremity (she has no restrictions on the non-dominant left upper extremity); she must avoid concentrated exposure to dangerous moving machinery, unprotected heights, dust, fumes, gases, odors, poor ventilation, and other pulmonary irritants; she can understand, remember, and carry out simple instructions, as well as make judgments on simple work-related decisions; she needs a low stress job (defined as having only occasional decision-making and only occasional changes in the work setting); she can have only brief, infrequent, and superficial contact with the public, and only occasional contact with coworkers and/or supervisors; she can maintain attention and concentration for two-hour segments over an eight-hour period and complete a normal workweek without excessive interruptions from psychologically or physically based symptoms. (Tr. 110-11). The VE testified that the hypothetical individual would not be capable of performing Jones' past relevant work. (Tr. 111). However, the VE testified that the hypothetical individual would be capable of performing the jobs of surveillance system monitor (175,000 jobs in the national economy), mail sort clerk (126,000 jobs), and clerical sorter

(60,000 jobs). (*Id.*). Upon questioning by Jones' attorney, the VE further testified that if the hypothetical individual was limited to only *occasional* reaching, handling, and fingering with the dominant right upper extremity (rather than *frequent*), the only job she could perform would be that of surveillance system monitor. (Tr. 112).

### D.     The ALJ's Findings

Following the five-step sequential analysis, the ALJ found that Jones is not disabled under the Act. At Step One, the ALJ found that Jones has not engaged in substantial gainful activity since July 17, 2007 (her alleged onset date). (Tr. 68). At Step Two, the ALJ found that Jones has the severe impairments of degenerative disc disease of the lumbar spine, osteoarthritis, carpal tunnel syndrome of the right hand, asthma, obesity, gastroparesis and gastritis or ulcerative esophagitis, major depressive disorder, bipolar disorder, and an anxiety disorder. (*Id.*). At Step Three, the ALJ found that Jones' impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 68-70).

The ALJ then assessed Jones' residual functional capacity ("RFC"), concluding that she is capable of performing sedentary work with the following additional limitations: she can occasionally climb ramps or stairs, but can never climb ladders, ropes, or scaffolds; she can occasionally balance, stoop, kneel, crouch, and crawl; she can frequently reach, handle, and finger with her dominant right upper extremity (she has no restrictions on the non-dominant left upper extremity); she must avoid concentrated exposure to dangerous moving machinery, unprotected heights, dust, fumes, gases, odors, poor ventilation, and other pulmonary irritants; she can understand, remember, and carry out simple instructions, as well as make judgments on simple work-related decisions; she needs a low stress job (defined as having only occasional decision-making and only occasional changes in the work setting); she can have only brief,

infrequent, and superficial contact with the public, and only occasional contact with coworkers and/or supervisors; she can maintain attention and concentration for two-hour segments over an eight-hour period and complete a normal workweek without excessive interruptions from psychologically or physically based symptoms. (Tr. 71-78).

At Step Four, the ALJ determined that Jones is unable to perform any of her past relevant work. (Tr. 78). At Step Five, the ALJ concluded, based in part on the VE's testimony, that Jones is capable of performing a significant number of jobs that exist in the national economy. (Tr. 78-79). As a result, the ALJ concluded that Jones is not disabled under the Act. (Tr. 79).

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide

questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'").

**F.     Analysis**

In her motion for summary judgment, Jones argues (1) that the ALJ erred in finding her left-sided carpal tunnel syndrome to be non-severe and in failing to incorporate any limitations resulting from this impairment into her RFC; and (2) that remand is warranted for consideration

of new evidence. (Doc. #13 at 14-18). Each of these arguments will be addressed in turn.

> 1. *The ALJ Erred in Analyzing Jones' Left-Sided Carpal Tunnel Syndrome, But His Errors Were Harmless*

Jones first argues that the ALJ erred in finding, at Step Two of the sequential evaluation process, that her left-sided carpal tunnel syndrome is not a severe impairment. (*Id.* at 14-16). The applicable regulations generally define a "severe" impairment as an "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. §416.920(c). Basic work activities are defined in the regulations as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §416.921(b). Examples include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *See id.* The Sixth Circuit has "characterized step two of the disability determination process as a '*de minimis* hurdle.'" *Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 929 (6th Cir. 2007). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).

The Court agrees with Jones that it is difficult to reconcile the ALJ's finding that her right-sided carpal tunnel syndrome is severe, with his finding that her left-sided carpal tunnel is non-severe. Specifically, in discussing Jones' carpal tunnel, the ALJ cited an April 2013 EMG that he acknowledged demonstrated "bilateral, severe, sensory motor, median mononeuropathy, carpal tunnel syndrome." (Tr. 73 (citing Tr. 983-84)). The ALJ also noted that, on more than one occasion, Phalen's testing was "positive bilaterally at 30 seconds." (Tr. 73 (citing Tr.

9

1026)). These objective findings would certainly seem to suggest that Jones' carpal tunnel syndrome is severe on both sides.

The Commissioner argues, however, that the ALJ adequately distinguished the severity of these impairments by pointing to evidence that some objective examinations contained "entirely normal findings." (Doc. #14 at 10). For example, the ALJ noted that, at an August 2013 examination, Jones exhibited 5/5 muscle strength in both upper extremities, with normal range of motion and no joint instability. (Tr. 73 (citing Tr. 1025)). The ALJ also noted that Jones' treatment records consistently reflected normal strength and range of motion in both upper extremities during the relevant period of time. (Tr. 1037-38, 1052-53, 1073, 1083, 1095). Moreover, the ALJ relied on Jones' testimony that her left-sided limitations were intermittent and less severe than the right. (Tr. 73, 97).

Considering all of the foregoing, the Court concludes that the ALJ's finding that her left-sided carpal tunnel syndrome was non-severe is not supported by substantial evidence. Both objective clinical testing (in the form of the April 2013 EMG) and objective clinical findings (in the form of repeated positive Phalen's testing) suggest the existence of severe, bilateral carpal tunnel syndrome. (Tr. 983-84, 1026, 1039, 1054, 1069, 1074, 1084). Moreover, the evidence establishes that Jones repeatedly complained of symptoms (sometimes pain, sometimes numbness and tingling) in *both* hands. (Tr. 1056, 1061, 1066, 1071, 1076, 1081, 1093). And, although Jones did testify that her left-hand numbness "comes and goes," while her right hand "consistently" is numb (Tr. 97), she also testified that carpal tunnel release surgery had been recommended for both hands (Tr. 103).

The Commissioner argues, however, that even if the ALJ erred in finding this impairment to be non-severe, such error was harmless because the ALJ "found that [she] had other severe

10

impairments and proceeded beyond step two of the sequential evaluation process …." (Doc. #14 at 11).  It is true that, if the ALJ considered *all* of Jones' impairments – both severe and non-severe – in formulating her RFC, then his failure to find additional severe impairments at Step Two does not constitute reversible error.  *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).  Indeed, the law is clear that, in determining an individual's RFC, "Once one severe impairment is found, the combined effect of all impairments must be considered, even if other impairments would not be severe." *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 787 (6th Cir. 2009); *see also* 20 C.F.R. §404.1523 ("In determining whether your physical or mental impairment or impairments are of a sufficient medical severity … we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.  If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process."); 20 C.F.R. §404.1545(a)(2) ("*If you have more than one impairment.*  We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity.") (emphasis in original).  Moreover, Social Security Ruling 96-8p provides that:

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe."  While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may – when considered with limitations or restrictions due to other impairments – be critical to the outcome of a claim.  For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

*Soc. Sec. Rul. 96-8p*, 1996 WL 374184, at *5 (July 2, 1996).  In summary, once the ALJ

11

determined that Jones suffers from numerous severe physical impairments (including right-sided carpal tunnel syndrome), he was required to consider those impairments in combination with Jones' other severe and non-severe impairments in assessing her RFC. *See Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 190-91 (6th Cir. 2009).

Here, it is clear that, in formulating Jones' RFC, the ALJ expressly considered her left-sided carpal tunnel syndrome, as he stated: "No restrictions have been assigned to her left non-dominant left upper extremity as the record does not contain evidence of any notable left-side condition." (Tr. 73). The problem, however, is that, for the reasons set forth above, substantial evidence does not support the ALJ's conclusion that there is no evidence of "any notable left-sided condition." Indeed, the ALJ acknowledged that an April 2013 EMG demonstrated "bilateral, severe, sensory motor, median mononeuropathy, carpal tunnel syndrome." (Tr. 73 (citing Tr. 983-84)). The ALJ also noted that, on more than one occasion, Phalen's testing was "positive bilaterally at 30 seconds." (Tr. 73 (citing Tr. 1026); *see also* Tr. 983-84, 1026, 1039, 1054, 1069, 1074, 1084). Moreover, the evidence establishes that Jones repeatedly complained of symptoms (sometimes pain, sometimes numbness and tingling) in *both* hands. (Tr. 1056, 1061, 1066, 1071, 1076, 1081, 1093). For all of these reasons, the ALJ's conclusion that there is no evidence of "any notable left-side condition" (Tr. 73) is simply at odds with the record. As a result, the ALJ's explicit decision not to incorporate any limitations into Jones' RFC finding to account for her left-sided carpal tunnel syndrome is not supported by substantial evidence.

According to Jones, "At a minimum, given the severity of [her] condition, a limitation to only occasional use of the *bilateral* upper extremities for reaching, handling, and fingering would be more appropriate and supported by the record." (Doc. #13 at 17). The Commissioner argues that, even if Jones is correct in this respect, "she still could not show harm, because the

12

VE testified that she would still be capable of performing the job of surveillance system monitor, with 175,000 jobs available in the national economy." (Doc. #14 at 12 (citing Tr. 79, 111-12)). The Court agrees. Indeed, the surveillance system monitor position identified by the VE actually requires *no* reaching, handling, or fingering whatsoever. *See* Dictionary of Occupational Titles ("DOT") 379.367-010, 1991 WL 673244. Therefore, even if Jones was completely incapable of reaching, handling, or figuring, she would still be able to perform the surveillance system monitor job, of which the VE testified there are 175,000 in the national economy.

Although Jones argues that the existence of only this one job is insufficient,[3] the Sixth

---

[3] In her reply brief, Jones argues that the existence of only one job – particularly that of a surveillance system monitor – may not satisfy the Commissioner's burden at Step Five. (Doc. #15 at 2-5 (citing *Smathers v. Comm'r of Soc. Sec.*, 2015 WL 401017, at *3 (S.D. Ohio Jan. 28, 2015) and *Cunningham v. Astrue*, 360 F. App'x 606, 615 (6th Cir. 2010)). In *Cunningham*, the VE, relying on the DOT, found the claimant to be capable of performing the jobs of security camera monitor (the equivalent of surveillance system monitor) and document preparer. *Id.* at 609. The Sixth Circuit recognized that the DOT was published more than ten years before Cunningham's hearing and observed that some of its descriptions – including that of surveillance system monitor – could be "obsolete." *Id.* at 615. Thus, it remanded the case for further consideration of whether the DOT listing for security camera monitor was reliable in light of the economy as it existed at the time of the administrative hearing. *Id.* at 616.

Relying on this language in *Cunningham*, Jones apparently argues now that the VE's reliance on the DOT in this case to identify the position of surveillance system monitor was inappropriate. The Court notes, however, that *Cunningham* is an unpublished, 2-1 decision, which has not been cited since by the Sixth Circuit and has been interpreted narrowly by other courts. *See Hayes v. Comm'r of Soc. Sec.*, 2011 WL 2633945, at *12 (W.D. Mich. June 15, 2011) ("The Sixth Circuit's unpublished decision in *Cunningham* did not declare that the job of [surveillance system] monitor was unreliable or obsolete."). And, in the five years since its issuance, ALJs and courts have continued to rely on VE testimony grounded in the DOT, and have affirmed findings of non-disability based on VE testimony that a claimant can perform the job of surveillance system monitor. *See, e.g., Creech v. Astrue*, 2013 WL 427627, at *8 (S.D. Ohio Feb. 4, 2013). Moreover, the proper time for a litigant to challenge the factual validity of the VE's testimony is at the ALJ hearing level, not before this Court, whose task is to review the administrative record for substantial evidence. *Cunningham*, 360 Fed. App'x at 616 ("our role is to decide whether the record made at the administrative hearing contains evidence adequate to support the Administrative Law Judge's conclusion. It is not within this reviewing court's proper authority to locate evidence it thinks ought to have been taken into account by a better informed, more thoroughly prepared expert witness…") (internal citation omitted) (Ryan, J., dissenting). Thus, the Court is not persuaded by Jones' argument in this respect.

Circuit has held that the existence of only one occupation can satisfy the Commissioner's burden of proving at Step Five the existence of a significant number of jobs the claimant can perform in the national economy. (Doc. #14 at 12-13 (citing *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 579 (6th Cir. 2009) (holding that one position, with 2,000 jobs, constituted a significant number) and *Bradley v. Comm'r of Soc. Sec.*, 40 F. App'x 972, 972 (6th Cir. 2002) (170,000 jobs in the national economy is a significant number)). For these reasons, the ALJ's error in failing to impose functional limitations to account for her left-sided carpal tunnel system is harmless, and remand is not warranted.

### 2. *Jones is Not Entitled to a Sentence Six Remand*

Jones also argues that this case should be remanded pursuant to sentence six of 42 U.S.C. §405(g) for consideration of additional evidence first submitted to the Appeals Council. (Doc. #13 at 17-18). Specifically, Jones directs the Court's attention to documents evidencing the fact that she underwent right carpal tunnel release surgery (in April 2014) and was recommended for left-sided surgery as well. (*Id.* at 11). Additionally, Jones points to records demonstrating that she was diagnosed with malignant invasive ductal carcinoma in the left breast in May 2014 and underwent a double mastectomy in July 2014. (*Id.* at 11-12).

Remand to consider additional evidence is appropriate only when the evidence is new and material, and good cause is shown as to why it was not presented at the prior proceeding. *See* 42 U.S.C. §405(g); *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984). Evidence is "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001). Here, the records at issue are dated between March 31, 2014, and July 21, 2014 (Doc. #13 at Exs. A-E); thus, they can be considered "new" evidence, as they did not exist at the time of the October

14

2013 hearing. However, even if Jones could establish "good cause" for her failure to submit these records sooner, she has failed to demonstrate that these records are "material."[4]

Courts have held that additional evidence is material only if there is "a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 712 (6th Cir. 1988). In this case, Jones has failed to establish that either Dr. Gupta's letter (recommending carpal tunnel release surgery on both hands), or the records reflecting her diagnosis with and treatment for breast cancer, are "material" under these standards.

According to Jones, Dr. Gupta's letter "shows the greater severity of [her] condition along with the continuation and worsening of [her] symptoms, including surgery for severe impairments …." (Doc. #13 at 18). The Appeals Council received Dr. Gupta's letter (Tr. 6) and concluded that this letter did not provide a basis for changing the ALJ's decision (Tr. 1-2). Moreover, the ALJ was fully aware that Jones had been referred for surgery for her right carpal tunnel syndrome. (Tr. 73). Nevertheless, he supportably found that the condition only limited her ability to perform frequent reaching, handling, and fingering. Jones has not explained how evidence showing she went through with right carpal tunnel surgery undermines the ALJ's assessment of her limitations, which prevents a finding that the evidence is material. *See Ward v. Comm'r of Soc. Sec.*, 1995 WL 712763, at *3 (6th Cir. Dec. 4, 1995) (new evidence of surgery

---

[4] "Good cause" requires the claimant to demonstrate "a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster*, 279 F.3d at 357. As this Court has recognized, "'Good cause' is *not* established solely because the new evidence was not generated until after the ALJ's decision; the Sixth Circuit has taken a 'harder line' on the good cause test." *Richardson v. Comm'r of Soc. Sec.*, 2012 WL 4210619, at *4 (E.D. Mich. Aug. 27, 2012) (citing *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986)) (emphasis in original). A plaintiff attempting to introduce new evidence "must explain why the evidence was not obtained earlier and submitted to the ALJ before the ALJ's decision." *Richardson*, 2012 WL 4210619, at *4. Here, Jones offers no explanation for why she failed to obtain and submit these records any sooner. (Doc. #13 at 17-18).

15

not material where ALJ was aware of condition and forthcoming surgery).  Moreover, as discussed above, *supra* at 12-14, even if this new evidence supported a limitation to no reaching, handling, or fingering with either hand, it would not prevent her from performing the surveillance system monitor job that the VE identified.  For these reasons, there is no reasonable probability that the ALJ's decision would have been different had he been aware that Jones would undergo right carpal tunnel release surgery a couple of months after his decision.  Thus, Dr. Gupta's letter is not material.

Nor has Jones shown that the evidence she submitted concerning her diagnosis of, and treatment for breast cancer is material because these records do not relate to the time period adjudicated by the ALJ.  *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) (newly submitted evidence was not material where the evidence pertained to a time outside the period adjudicated by the ALJ).  This evidence pertains to the diagnosis and treatment of breast cancer in May through July of 2014.  (Doc. #13 at Exs. B-E).  The ALJ adjudicated the period through January 31, 2014.  (Tr. 63-80).  Jones has not even alleged – let alone established – that this evidence relates to the period addressed by the ALJ.  Accordingly, Jones has not established that evidence of her breast cancer diagnosis and treatment is material to the ALJ's decision.

For all of these reasons, Jones has not established a reasonable probability that the Commissioner would have reached a different conclusion on the issue of disability for the relevant period if presented with the proffered new evidence.  As such, Jones is not entitled to a sentence six remand.

### III. CONCLUSION

For foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [14] be GRANTED, Jones' Motion for Summary Judgment [13] be

DENIED, and this case be AFFIRMED.


Dated: September 30, 2015                        s/David R. Grand
Ann Arbor, Michigan                           DAVID R. GRAND
                                               United States Magistrate Judge


## REVIEW

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. *See* E.D. Mich. L.R. 72.1(d)(2).

*Note these additional requirements at the direction of Judge Cleland:*

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.

17

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 30, 2015.

                                            s/Eddrey O. Butts
                                            EDDREY O. BUTTS
                                            Case Manager